UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

3:45 pm, Dec 18, 2017

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

--------------------------------------------------------X

ARCHIE ELLIS MIDGETT, III,

                 Plaintiff,

         -against-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

              Defendant.

**MEMORANDUM OF
DECISION & ORDER**
16-cv-2876 (ADS)

--------------------------------------------------------X

## APPEARANCES:

**Stanton Guzman & Miller, LLP**
*Attorneys for the Plaintiff*
820 Hempstead Turnpike,
Franklin Square, NY 11010
      By:    Stacey R. Guzman, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Edwin R. Cortes, Assistant United States Attorney

**SPATT, District Judge**:

On June 6, 2016, the Plaintiff Archie Ellis Midgett, III (the "Plaintiff" or the "Claimant")

commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"),

challenging a final determination by the Defendant, Nancy A. Berryhill, the Acting Commissioner

of the Social Security Administration (the "Defendant" or the "Commissioner"), that he is

ineligible to receive Social Security disability insurance benefits.

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil

Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons

that follow, the Plaintiff's motion is granted in part and denied in part, and the Defendant's motion is granted in part and denied in part.

## I. BACKGROUND

On June 26, 2013, the Plaintiff applied for disability insurance benefits under the Act, alleging that he had been disabled since October 24, 2009. The Plaintiff claims that he is disabled because of a motor vehicle accident which resulted in back, neck, shoulder and knee injuries.

His claim was denied on August 23, 2013, and he requested a hearing. The Plaintiff appeared with counsel before Administrative Law Judge April M. Wexler (the "ALJ") on November 17, 2014. On January 8, 2015, the ALJ issued a written decision in which she found that the Plaintiff was not entitled to disability benefits under the Act.

The Plaintiff sought a review by the Appeals Council, who denied his request on April 4, 2016. The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of the Plaintiff's request for review.

On June 6, 2016, the Plaintiff filed the instant action. The parties submitted the matter as fully briefed to the Court on April 24, 2017.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

### A. The Standard For Benefits Under The Act

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his, "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The Claimant bears the burden of proving the first four steps, but then the burden shifts to the Commission at the fifth step to prove that the Claimant is capable of working. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa,* 168 F.3d at 77. *See also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L. Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520,

416.920.  When conducting this analysis, the ALJ must consider the objective medical facts, the

diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability,

and the claimant's age, background, education and work experience.  *Mongeur v. Heckler*, 722

F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

**B.  The Standard Of Review**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set

aside the Commissioner's conclusions only if they are not supported by substantial evidence in the

record as a whole or are based on an erroneous legal standard."  *Koffsky v. Apfel*, 26 F. Supp. 2d

475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179-81 (2d Cir. 1998));

*accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126,

131 (2d Cir. 2000)); 42 U.S.C. § 504(g).  *See also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.

1990) ("Where there is substantial evidence to support either position, the determination is one to

be made by the factfinder.").  The ALJ is required to set forth those crucial factors used to justify

his or her findings with sufficient particularity to allow the district court to make a determination

regarding the existence of substantial evidence.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.

1984).

Accordingly, "the reviewing court does not decide the case *de novo.*"  *Pereira v. Astrue*,

279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir.

2004)).  Rather, "the findings of the Commissioner as to any fact, if supported by substantial

evidence, are conclusive," *id*. (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is

not "whether there is substantial evidence supporting the [claimant's] view"; instead, the Court

"must decide whether substantial evidence supports *the ALJ's decision.*"  *Bonet v. Colvin*, 523 F.

App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis in original).  In this way, the "substantial

evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would *have to conclude otherwise.*'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L. Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (summary order) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a *de novo* review. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

**C. Application To The Facts Of This Case**

The Plaintiff asks this Court to remand the case back to the Commissioner for the calculation of benefits or, in the alternative, for further proceedings to remedy what the Plaintiff believes was a deprivation of a full and fair ALJ hearing. *See Cruz v. Barnhart*, 343 F. Supp. 2d 218, 220 (S.D.N.Y. 2004) (stating that before a court analyzes the merits of a Social Security case, "[t]he reviewing court 'must first be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the … Act'" (quoting *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir. 1990) (internal citations omitted))).

The Plaintiff contends that he was deprived of a full and fair hearing because the ALJ (1) inaccurately concluded that the Plaintiff's injuries did not meet or equal the requirements of listed impairment 1.04(A), entitled "Disorders of the Spine"; (2) either afforded insufficient weight or failed to take into account the opinions of four of the Plaintiff's treating physicians; (3) failed to appropriately evaluate the opinion of a disability analyst; and (4) failed to properly assess the Plaintiff's credibility. In opposition, the Commissioner argues that the ALJ's decision that the Plaintiff was not disabled is supported by substantial evidence.

**1. As To Whether Substantial Evidence Supports A Finding That The Plaintiff's Injuries Meet Or Equal The Requirements Of Adult Listed Impairment 1.04(A)**

The Plaintiff claims that his back maladies meet or equal the requirements of Listed Impairment 1.04(A), Disorders of the Spine. The Defendant contends that substantial evidence

supports the ALJ's conclusion that his impairments did not meet or exceed any Listed Impairment, including 1.04(A). For the reasons set forth below, the Court agrees with the ALJ's determination.

At step three, the ALJ is required to determine whether the Claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. If the impairment meets or medically equals one of the listed criteria, the claimant is considered disabled. If not, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ ruled that the Claimant did not have any impairment that met that criteria. *See* R. at 12. Specifically, the Claimant's shoulder injury was evaluated under Section 1.02 and it was determined that:

> there is no evidence of a gross anatomical deformity … and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affective joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joints with involvement of one major peripheral joint in each upper extremity.

R. at 12. His spinal injury was evaluated under Section 1.04 and the ALJ found that "the evidence fails to demonstrate the existence of a 'herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or verbal fracture' which results in the compromise of a nerve root or the spinal cord." R. at 12.

Section 1.04A is defined as:

> Disorders of the spine … resulting in compromise of a nerve root … or the spinal cord. With: A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, moto loss (atrophy associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising text (sitting and supine).

20 C.F.R. § 404, Subpart P, Appendix 1 § 1.04. "Thus, in order to satisfy this listing, [a p]laintiff must establish that (1) []he has a disorder of the spine which compromises a nerve root or the spinal cord, and (2) that this disorder is manifested by neuro-anatomic distribution of pain, limiting of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *McKinney v. Astrue*, No. 5:05-cv-0174, 2008 WL 312758, at *4 (N.D.N.Y. Feb. 1, 2008).

A claimant may also find that, although his or her impairment does not meet the specific criteria of a Medical Listing, it still may be medically equivalent to one. To do so, the ALJ must determine that: "(1) the claimant has other findings that are related to his or her impairment that are equal in medical severity; (2) the claimant has a 'closely analogous' impairment that is 'of equal medical significance to those of a listed impairment;' or (3) the claimant has a combination of impairments that are medically equivalent." *Valet v. Astrue*, No. 10-cv-3282, 2012 WL 194970, at *13 (E.D.N.Y. Jan. 23, 2012) (internal citations omitted).

In the instant case, ALJ Wexler properly found, based on correct legal principles and substantial evidence that the Claimant's impairments did not meet or equal Medical Listing 1.04A during the insured period. *See* R. at 12-13. This conclusion is corroborated by the medical evidence in the administrative record. The third requirement of Medical Listing 1.04A is "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." According to the medical records, the Claimant did not experience significant sensory loss, atrophy or motor loss during the insured period. Dr. Hecht's examinations show no spasms, normal reflexes, and intact sensations. *See* R. at 265, 271-73. Furthermore, Dr. Essig's examinations also yielded full reflexes, sensation and motor skill strength. *See* R. at 281, 283,

286. While the Plaintiff argues that the operative report that corresponded to his September 2013 back surgery contains reports of degenerative disk disease, "[e]vidence of an impairment that reached disabling severity after the expiration of an individual's insured status cannot be the basis for a disability determination, even though the impairment itself may have existed before the individual's insured status expired." *Mattison v. Astrue*, No. 07-cv-1042, 2009 WL 3839398, at *5 (N.D.N.Y. Nov. 16, 2009).

Finally, a review of the administrative record does not reveal any evidence of a positive straight leg raising (both sitting and supine). On the contrary, examinations by Drs. Hecht and Essig repeatedly found straight leg raising tests to be negative. *See* R. at 265, 267, 271-73, 281.

The Court notes that "although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony demonstrate that substantial evidence supports this part of the ALJ's determination. Accordingly, because this is not a case 'in which we would be unable to fathom the ALJ's rationale in relation to the evidence in the record,' there is no need for us to remand this case to the ALJ for clarification." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) (quoting *Berry*, 675 F.2d at 469). Therefore, the Court finds that the ALJ's conclusion that the Claimant did not have an impairment that meets or medical equals the requirements of Medical Listing 1.04(A) is proper.

### 2. As To Whether The ALJ's Residual Functional Capacity Finding Was Supported By Substantial Evidence

The Plaintiff argues that ALJ Wexler's findings regarding the Claimant's RFC was not supported by substantial evidence due to the following errors: (1) ALJ Wexler violated the treating physician rule with regard to Drs. Mango, Essig, Rokito and Ventrudo by failing to specify the weight assigned to each of their opinions, except for Dr. Ventrudo, and refusing to justify this

assignment for all four physicians; (2) inappropriately assessing the New York State disability analyst; and (3) improperly evaluating the Plaintiff's testimony. The Court will address each of these complaints in turn.

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight," so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue*, No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same). Although, the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess*, 537 F.3d at 128. The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see also Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot substitute his or her "own assessment

of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

### a. Whether The ALJ Assigned Proper Weight To Dr. Ventrudo's Opinion

The Plaintiff argues that the ALJ committed legal error by arbitrarily and capriciously ascribing "limited weight" to Dr. Ventrudo's consultative opinion, without properly explaining why limited weight was afforded based on the prescribed factors.

ALJ Wexler assigned "limited weight" to the opinion of Dr. Ventrudo, who treated the Claimant from March 29, 2013 to October 31, 2014. However, the vast majority of his treatment occurred after the insured period. The ALJ commented that Dr. Ventrudo,

> indicated that the claimant has radiating pain, numbness, tingling and weakness and, consequently, is unable to sit more than two hours or stand/walk more than one hour. Dr. Ventrudo further stated that the claimant will occasionally need to recline, is able to lift/carry as much as 20 pounds occasionally, is able to occasionally reach, and should avoid bending and squatting. [He] also indicated that the claimant is able to sit or stand/walk a total of two hours or less each in an eight-hour workday.

R. at 14-15.

The ALJ gave limited weight to Dr. Ventrudo's opinion for two reasons. First, ALJ Wexler stated that "Dr. Ventrudo only began seeing the claimant two days prior to the date that he was last insured [and] does not indicate when the limitations…began[.]" R. at 15. This was a proper factor to consider in determining what weight to assign as a claimant is required to demonstrate that he was disabled prior to his date last insured. *See Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989) (ruling that "unless [the Plaintiff] became disabled before [his insured status lapsed], he cannot be entitled to benefits"); *see also Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (noting that "[s]ince none of the doctors who treated [the plaintiff] expressed an opinion about plaintiff's ability to work prior to [the date her insurance status expired], plaintiff's contention that the treating physician rule has been misapplied is without merit").

The ALJ properly evaluated this in the context of the first factor, the frequency of examination and length, nature and extent of treatment relationship. Here, many of the opinions referenced are dated over a year after the expiration of his insured status and are devoid of any timeframe reference. They are all written in the present tense with no historical section that details past maladies. They do not detail when the Claimant's injuries or symptoms began or whether or not they existed prior to March 31, 2013. In fact, the Plaintiff only visited Dr. Ventrudo once before March 31, 2013. That single treatment note, while instructive, does not require the ALJ to afford Dr. Ventrudo controlling weight. *See Selian*, 708 F.3d at 419 ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); *see also Cruz*, 912 F.2d at 13 (noting that "consultative exams are often brief . . . and, at best, only give a glimpse of the claimant on a single day").

Second, ALJ Wexler determined that Dr. Ventrudo's opinions were accorded limited weight because "the limitations are not fully consistent with treatment records relevant to the period in question." R. at 15. This was a proper application of the third factor, the opinion's consistency with the record as a whole, to the instant facts. *See* 20 C.F.R. § 404.1527(c)(3)-(4) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. … Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). This determination is supported by substantial evidence, as an evaluation of the record reveals inconsistencies with other medical records. *See, e.g.*, R. at 285-86, 304-05.

For the abovementioned reasons, the Court finds that the ALJ did not err in her analysis of Dr. Ventrudo's opinions. By considering the relevant factors, substantial evidence indicates that she properly accorded limited weight to his opinion.

Therefore, the Court finds that the ALJ did not abuse her discretion by according limited weight to the medical opinion of Dr. Ventrudo. The Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) based on that argument is denied while the Defendant's motion for a judgment on the pleadings based on the above-mentioned argument is granted.

**b. As To Whether The ALJ Ascribed Proper Weight To Dr. Mango, Essig, Hecht And Rokito's Opinion**

The Plaintiff also argues that the ALJ committed legal error by not assigning any weight to Drs. Mango, Essig and Rokito without addressing the relevant factors or even providing an explanation. The Defendant contends that the ALJ was not required to ascribe a certain weight to the opinions of Drs. Essig and Rokito as they were not medical opinions, and in the case of Dr. Mango, contained an inappropriate opinion. The Court finds that the ALJ did commit error as to all three treating physicians. The Court also finds that the ALJ committed legal error by not assigning any weight to Dr. Hecht.

As an initial matter, medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

20 C.F.R. § 404.1502 lists the "acceptable medical sources" . . . "who can provide evidence to establish an impairment." As to opinions from medical sources who are not acceptable medical sources and from nonmedical sources, the Act states:

> Opinions from medical sources who are not acceptable medical sources and from nonmedical sources may reflect the source's judgment about some of the same

issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors [applied to medical opinions] not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case. Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 404.1527(f)(1). Taking these rules into account, the Act states that ALJs "generally should explain the weight given to opinions" from medical sources who are not acceptable medical sources and from nonmedical sources. 20 C.F.R. § 404.1527(f).

Drs. Hecht, Mango, Essig and Rokito are licensed medical physicians, and therefore acceptable medical sources. *See* 20 C.F.R. § 404.1527 (listing licensed medical physicians as acceptable medical sources). Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Accordingly, any diagnoses, prognoses, and statements about the severity and nature of impairments would be medical opinions.

The Second Circuit has not given explicit guidance on the precise difference between treatment notes and medical opinions. However, it is clear from the caselaw that they are two separate categories as the Second Circuit has often held that ALJs can disagree with doctors' medical opinions when they differ from treatment notes. *See, e.g., Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (holding that a court can give less weight to a treating source's medical opinion where the treatment notes contradict the opinion); *Camille v.*

*Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (holding that the treatment notes of other doctors can be relied upon to override the medical opinion of a treating physician); *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (holding that ALJ did not err in failing to obtain a formal medical opinion from the Plaintiff's treating psychiatrist where the ALJ relied on that doctor's treatment notes); *Cichocki*, 534 F. App'x at 75 (holding that the ALJ was not required to give controlling weight to treating physician's medical opinion where the treatment notes contradicted that opinion); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (holding that ALJ did not need to acquire a medical source statement from the treating physician when the ALJ had all of the treatment notes from the Plaintiff's treating physicians).

In the instant case, Drs. Hecht, Essig and Rokito gave opinions regarding the Plaintiff's shoulder, spine and knee injuries. Dr. Hecht's notes include diagnoses, statements reflecting medical judgments about the character and severity of injuries, and recommendations for treatment. Dr. Hecht's treatment of the Claimant began on October 26, 2009, two days after the motor vehicle accident, and continued until November 21, 2011. In the Court's view, Dr. Hecht's notes are more than mere treatment notes—they are medical opinions.

Drs. Essig and Rokito are both physicians at North Shore LIJ Orthopedic Institute ("North Shore"). The Claimant was treated at North Shore prior to the last date insured. Dr. Rokito treated the Claimant for his shoulder and hip ailments and is the physician who performed surgery on his left shoulder in August 2012. Dr. Rokito's notes include diagnoses; an operative report; statements reflecting medical judgments about the character and severity of his injuries; and recommendations for treatment. Dr. Essig, an orthopedic surgeon with a specialty in the spine, presented notes in the administrative record which included detailed characterizations of the nature and severity of

15

the Claimant's injuries; medical test recommendations; treatment recommendations; and diagnoses. In the Court's view, the notes of Drs. Rokito and Essig notes are medical opinions.

Therefore, the Court finds that the portions of the administrative record related to Drs. Hecht, Essig and Rokito were medical opinions within the definition of the Act. These documents did not merely list the symptoms detailed by the Claimant or the tests performed by Drs. Hecht, Essig and Rokito. As such, in the Court's view, these were more than mere treatment notes. *See, e.g.*, *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) (summary order) (holding that a doctor's recording of the plaintiff's own reports of pain were mere treatment notes); *Moua v. Colvin*, 541 F. App'x 794, 797 (10th Cir. 2013) (a treatment note that simply documented the patient's complaints and prescribed treatments was not a medical opinion); *Mapson v. Colvin*, No. 14-cv-1257, 2015 WL 5313498, at *30 (D. Minn. Sept. 11, 2015) ("However, these statements, and others noted in [the treating physician]'s treatment notes, merely document the Plaintiff's complaints, appearance, and the medications prescribed to her."); *cf. Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("The Commissioner argues that the ALJ was not required to consider the treating physician's treatment notes because they did not constitute a 'medical opinion,' but this argument ignores the language of the regulations."); *Kaighn v. Colvin*, 13 F. Supp. 3d 1161, 1165 (D. Colo. 2014) (holding that notes from a doctor who managed the Plaintiff's psychiatric medications and diagnosed the Plaintiff with several psychiatric disorders were medical opinions that the ALJ had to consider and determine what weight to assign to them).

Therefore, the Court finds that ALJ Wexler erred in not assigning any weight to the medical opinions of Drs. Hecht, Essig and Rokito and for not considering the required factors under the Act. "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quoting *Schaal*

16

*v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998)); *accord Halloran*, 362 F.3d at 32 ("An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give the opinion." (citing 20 C.F.R. § 404.1527(d)(2)); *Perez v. Astrue*, No. 07-cv-958, 2009 WL 2496585, at *8 (E.D.N.Y. Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician."). *See, e.g.*, *Branca v. Comm'r of Soc. Sec.*, No. 12-cv-643, 2013 WL 5274310, at *12 (E.D.N.Y. Sept. 18, 2013); *Torres v. Comm'r of Soc. Sec.*, No. 12-cv-330, 2014 WL 69869, at *1, *9 (E.D.N.Y. Jan. 9, 2014).

ALJ Wexler's opinion is bereft of any discussion concerning the weight, if any, which was given to Drs. Hecht, Essig and Rokito. The Commissioner's guidelines are clear that the ALJ must afford some weight to all medical opinions; and must either give controlling weight to the medical opinion or a treating source; or good reasons for not affording it controlling weight. 20 C.F.R. § 404.1527. Failure to do so is cause for remand. *Schaal*, 134 F.3d at 504. "[O]n this record, we cannot say with certainty what weight should be assigned . . . to the opinion of plaintiff's treating physician, or whether further clarification of the record with these regulations in mind might alter the weighing of the evidence." *Id.*

In regard to Dr. Mango, the Defendant contends that the ALJ disregarded his opinion, who she concedes expressed a medical opinion, because Dr. Mango stated multiple times that the Plaintiff was "totally disabled" in his notes. *See, e.g.*, R. at 324, 327, 329. As the ALJ recognized in her report, Dr. Mango's portion of the administrative record includes Workers Compensation/No Fault Progress Reports on which he indicated, by checking a box, that the Claimant was "totally disabled." *See, e.g.*, *id.* ALJ Wexler fails to even mention Dr. Mango by

name, but instead notes, in a conclusory fashion, "I carefully considered the medical source opinions, including opinions about issues that are reserved to the Administrative Law Judge[.]" R. at 15.

As stated previously, in general, the opinions of treating physicians that are "well supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence, [are given] controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(12). Although the ultimate determination of whether a claimant meets the statutory definition of a disability is reserved to the Commissioner, *see* 20 C.F.R. § 404.927(e)(1), a disability determination intended for another government agency, while not binding is entitled "to some weight and should be considered." *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975). The ALJ largely failed to address this determination, only noting that such decisions are "reserved to the Administrative Law Judge." R. at 15. The failure to assign any weight to Dr. Mango's medical opinions as a treating physician because a portion of the opinion contained a disability determination constituted legal error, requiring remand.

Furthermore, the ALJ's failure to discuss the required factors under the Act also constituted legal error. ALJ Wexler failed to note what treatment Dr. Mango provided to the Claimant nor did she discuss the physician's medical findings or opinions. ALJ Wexler merely asserts, in a conclusory fashion that because Dr. Mango noted that the Plaintiff was "totally disabled," his opinions were disregarded.

In the Second Circuit, the ALJ is required to "give good reasons in [her] notice of determination or decision for the weight [she] gives [claimant's] treating source's opinion." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (internal citations omitted). Here, the ALJ ignored that obligation. As such, remand is appropriate.

Consequently, the Court finds that the ALJ committed legal error by failing to ascribe any weight to these medical opinions from treating physicians. *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (summary order) ("[F]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." (internal citations omitted)); *Stiggins v. Barnhart*, 277 F. Supp. 2d 239, 244 (W.D.N.Y. 2003) ("ALJ's legal analysis is erroneous since he does not properly evaluate whether the opinions of plaintiff's treating physicians were entitled to controlling weight, or any weight, pursuant to the regulations."). The Court is unable to address whether or not the ALJ's opinion on the issue of the Claimant's RFC is supported by substantial evidence because the ALJ committed legal error that requires remand. *Stango v. Colvin*, No. 3:14-CV-01007, 2016 WL 3369612, at *16 (D. Conn. June 17, 2016) ("[A] district court may not assess objections as to 'substantial evidence' where an ALJ decision is infected with legal error." (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987))).

Accordingly, the Court remands the case to the ALJ so that the ALJ can address, with specificity, the treating records and medical opinions of Drs. Mango, Hecht, Essig and Rokito and either 1) ascribe controlling weight to them or 2) provide relevant reasons for the weight they are to be given in accordance with the Act. *See Halloran*, 362 F.3d at 32–33.

### c. As To Whether The ALJ Properly Assessed The Disability Analyst

The Plaintiff further contends that the ALJ erred by failing to provide any weight to the New York State disability analyst. *See* R. at 15, 315-19. However, the Court can quickly dispense with this objection, since such opinions do not amount to medical evidence. *See Bush v. Colvin*, No. 13-cv-994, 2015 WL 224764, at *11 n.15 (N.D.N.Y. Jan. 15, 2015) ("Opinions of a disability analyst, who has no medical training, are not entitled to evaluation as medical opinions." (internal citations omitted)); *Legall v. Colvin*, No. 12-cv-1426, 2014 WL 4494753, at *4 (S.D.N.Y. Sept.

10, 2014) ("[A] disability analyst's (or disability examiner's) opinions are not entitled to any medical weight"); *Andrews v. Astrue*, No. 10-cv-1202, 2012 WL 3613078, at *9 (N.D.N.Y. Aug. 21, 2012); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 348 n.10 (E.D.N.Y. 2010); *Miller v. Astrue*, No. 07-cv-1093, 2009 WL 2568571, at *10 (N.D.N.Y. Aug. 19, 2009) ("The Court notes that the form Plaintiff refers to was completed by the Social Security disability analyst. Therefore the ALJ was not required to assign weight to the opinion, nor should the ALJ prefer such an opinion over Plaintiff's treating physician."). The Plaintiff's argument on this point lacks merit. The Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) on this basis is denied, while the Defendant's cross-motion for judgment on the pleadings pursuant to Rule 12(c) on that basis is granted.

### d. As To Whether The ALJ Properly Assessed The Plaintiff's Credibility

The Plaintiff states that the ALJ's decision failed to properly evaluate the Claimant's subjective complaints of pain. As the Plaintiff acknowledges, evaluating the credibility of the Claimant is the province of the ALJ. *See Fishburn v. Sullivan*, 802 F. Supp. 1018, 1023-24 (S.D.N.Y. 1992). This is due to the inherent difficulty in evaluating a witnesses credibility from a secondhand perspective.

The ALJ is required to conduct a two-step analysis to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with medical and other evidence from the administrative record. *Brownell v. Comm'r of Soc. Sec.*, No. 05-cv-0588, 2009 WL 5214948, at *3 (N.D.N.Y. Dec. 28, 2009); *see also* 20 C.F.R. § 404.1529. First, the ALJ must consider whether the medical evidence reveals any impairment "which could reasonably be expected to produce the pain or other symptoms alleged[.]" 20 C.F.R. § 404.1529(a). "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the

extent to which it limits the claimant's capacity to work." *Crouch v. Comm'r of Soc. Sec.*, 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). If, on the other hand, the objective medical evidence does not substantiate the alleged injuries, the ALJ must assess the credibility of the Claimant's testimony in the context of the case record as a whole. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Here, ALJ Wexler properly applied the above two-step analysis. *See* R. at 13.

First, the Plaintiff contends that, "[t]he ALJ wholly fails to contain specific reasons for finding that the Plaintiff's allegations of pain and limitations are not credible." Where subjective symptoms are at issue, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987). In the Second Circuit, "[a]n [ALJ] may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal citations and quotation marks omitted); *accord Fishburn*, 802 F. Supp. at 1027-28. The ALJ may consider seven factors relevant to a claimant's symptoms:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(viii). The ALJ, however, is not required to discuss all seven factors as long as the decision "includes precise reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ gave to the claimant's statements and the reasons for that weight." *Felix v. Astrue*, No. 11-cv-3697, 2012 WL 3043203, at *8 (citing *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546-47 & n.5 (S.D.N.Y. 2004)).

In the instant case, ALJ Wexler properly explained why she determined that the Claimant's credibility was limited. This decision was based on an evaluation of the entire record, including careful examination of the Claimant's testimony. Specifically, the ALJ noted that his daily activities were inconsistent with his complaints. *See* R. at 15 ("For example, he attended college from the alleged disability onset date until November 2012, including using multiple means of transportation to get there."). ALJ Wexler also mentioned that his representations of pain and symptoms are inconsistent with the medical records. *See id*. 15-16. The Court finds that such findings were supported by substantial evidence. *See Dunn v. Chater*, 101 F.3d 1392, 1996 WL 387218, at *3 (2d Cir. 1996) (unpublished decision); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 318-19 (W.D.N.Y. 2013); *Luther v. Colvin*, No. 12-cv-6466, 2013 WL 3816540, at *7-8 (W.D.N.Y. July 22, 2013); *Williams v. Astrue*, No. 09-cv-3997, 2010 WL 5126208, at *13 (E.D.N.Y. Dec. 9, 2010).

Second, the Plaintiff argues that "[t]he ALJ egregiously utilizes the Plaintiff's past criminal record as part of her rationale as to why the Plaintiff is not credible." This mischaracterizes ALJ Wexler's discussion of the Claimant's criminal past. An examination of the administrative record by the Court reveals that the issue of his past criminal conviction was not used to *evaluate the credibility* of the Claimant, but rather to *explain the Plaintiff's work history*. The Claimant's felony drug conviction explains why he stopped working as a custodial worker in November 2007. The

consideration of such evidence by the ALJ was appropriate and helpful. *See Cosme v. Comm'r of Soc. Sec.*, No. 5:13-cv-0933, 2015 WL 1084798, at *11 (N.D.N.Y. Mar. 11, 2015); *Stover v. Astrue*, No. 11-cv-0172, 2012 WL 2377090, at *6 (S.D.N.Y. Mar. 16, 2012) ("The Commissioner must consider … subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or *work history*." (emphasis added)).

Therefore, the Court holds that the ALJ's findings regarding the Plaintiff's subjective complaints are supported by substantial evidence. The Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) on that basis is denied and the Defendant's cross-motion for judgment on the pleadings on that basis is granted.

## III. CONCLUSION

Accordingly, for the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is granted in part and denied in part, and the Defendant's motion for judgment on the pleadings is also granted in part and denied in part. The case is remanded for further proceedings consistent with this opinion.

The Clerk of the Court is respectfully directed to close this case.


It is **SO ORDERED:**

Dated: Central Islip, New York

December 18, 2017


_____*/s/ Arthur D. Spatt*_____

ARTHUR D. SPATT

United States District Judge